**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0452-21

S.L.P.,

    Plaintiff-Respondent,

v.

A.L.N.,

    Defendant-Appellant.

_____

        Submitted September 29, 2022 – Decided October 7, 2022

        Before Judges Haas and Gooden Brown.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FD-09-0755-13.

        Matthew Gerber, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

Defendant A.L.N.[1] appeals from the Family Part's August 31, 2021 order denying his request to compel blood or genetic testing to determine whether he is the biological father of plaintiff's (S.L.P.'s) child. We reverse.

The parties were dating in 2011 when plaintiff became pregnant. Plaintiff told defendant he was the father of the child. Defendant did not question plaintiff's representation and his name appears on the child's birth certificate. About a month after the child was born, the parties ended their relationship.

Defendant lived in Texas. Over the course of the ensuing years, defendant never visited or contacted the child. He paid child support, but was over $18,000 in arrears as of August 2021.

Eventually, defendant moved to New Jersey. In April 2021, the parties appeared before the Family Part for the first time. The court granted plaintiff sole custody of the child and the parties agreed that defendant could have some parenting time.

Defendant visited with the child on only one occasion. During that visit, defendant took swab samples from both himself and the child for a "home DNA test." Defendant sent the samples away for analysis and received a written report

---

[1] Because this matter involves paternity of a minor child, we refer to the parties by initials to protect their privacy. R. 1:38-3(a)(14).

stating there was "0% Probability" that he was the child's biological parent. Defendant testified that after he got the test results, he sent the report to plaintiff and asked "if there was a possibility that someone else could be the father." She told him "no, she never had any dealings with anyone else except for [defendant] at the time." Defendant then filed his motion to compel paternity testing through the Family Part.

The court served defendant's motion upon plaintiff. She did not appear at the hearing on the motion. Defendant appeared and testified in support of his application. Defendant stated he suspected he was not the child's father after seeing photographs of the child on social media. Therefore, defendant performed the home test, which he believed confirmed his suspicions.

At the conclusion of the hearing, the trial court denied defendant's motion. In a terse oral decision, the court stated it did not "have a basis for revisiting paternity at this point" because "[t]he child's [nine] years old. This is something that should have been done many, many years ago and it wasn't." Although the court served plaintiff with defendant's motion, it expressed a reluctance to consider the motion without plaintiff's consent. The court also remarked that defendant was, "to a certain degree, the psychological father" of the child even though the two had only had one visit together. This appeal followed.

A-0452-21

On appeal, defendant argues that the trial court "erred in denying [his] unopposed request for a paternity test." We agree.

The scope of our review of the Family Part's orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Id. at 413. However, findings by a trial court are only "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 412-13. Moreover, we owe no deference to the trial judge's legal conclusions, which we review de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

This matter is controlled by the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59. "[A]fter an action to declare the existence or nonexistence of the father and child relationship has been brought," the trial court should conduct a consent conference with the parties. N.J.S.A. 9:17-48(a). However, the matter can be referred directly to the court for resolution without a conference if requested by a party. Ibid. That is what occurred in this case.

At that point in the proceeding, "the court shall order the child and the parties to submit to blood tests or genetic tests unless a party claims, and the

. . . court finds, good cause for not ordering the tests."[2]  N.J.S.A. 9:17-48(d). Here, plaintiff filed no opposition to defendant's application for a paternity test and did not appear at the hearing to contest his request.

The trial court did not consider the Parentage Act in denying defendant's motion.  Under the clear terms of the Act, the court should have ordered a blood or genetic test to determine paternity.

The trial court's brief findings concerning defendant's application are not supported by defendant's uncontested testimony at the hearing.  Contrary to a statement the court made in its order, plaintiff never took a position on defendant's motion; she failed to file an opposing brief or appear at the hearing. The fact that the child was nine years old did not bar defendant from seeking to establish paternity through testing.  The Parentage Act only bars paternity actions that are "brought . . . more than five years after the child attains the age of majority."  N.J.S.A. 9:17-45(b).  Because defendant had only had one visit with the child since 2011, the record also does not support the court's finding that defendant was the child's "psychological father."

---

[2]  In D.W. v. R.W., 212 N.J. 232, 257 (2011), the Supreme Court established an eleven-part test to assist trial courts in determining whether good cause exists to grant or deny genetic testing when a party objects on that basis.  Because plaintiff did not contest defendant's motion, there was no basis for the court to consider the D.W. test in this case.

A-0452-21

Under these circumstances, we reverse the August 31, 2021 order and remand the matter to the trial court for the prompt entry of an order directing the testing defendant requested.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION